## JOHN H. BARTLETT *vs.* SIMON BARROWS.

PROVIDENCE—MAY 3, 1901.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Deeds. Partition. Boundaries.*

Owners of land in common, who each owned part of a house situated thereon, in severalty, executed deeds to each other assuming to divide the land and the buildings which stood upon it. The language in the deeds was identical. The deeds contained a positive boundary line from the middle of the front door on through the house to the middle of the back side of the house. They also contained this clause: "The internal division of the rooms and stairways of the house to remain the same as during the life of W., as said rooms and stairways were occupied and divided between W. and R." The occupation referred to was not the same on the first and second floor, the partitions bounding the rooms on the upper floor not being superimposed on those dividing the rooms on the lower floor:—

*Held*, that the clause was no part of the description of the boundary between the two parcels of land, the deeds containing a well-defined boundary line, together with an agreement with respect to the property.

(2) *Agreement. Deeds.*

*Held*, further, that the clause constituted an agreement binding upon the parties and their successors in title.

(3) *Exceptions. Reservations.*

After the execution of the deeds one of the owners conveyed his interest to a third party, the deed containing the same clause :—

*Held*, that the clause was not void as a reservation·to a stranger, but as it reserved rights which existed as against the grantor before his conveyance, it had the effect of an exception, limiting the preceding description of the property conveyed.

*Held*, further, that if the clause had not been repeated in the deed, the grantee would have been equally bound by its provisions, the former deed dividing the estate having been duly recorded.

TRESPASS AND EJECTMENT brought by the grantee of one of the original parties mentioned in the opinion. · The facts are fully stated. Heard on agreed statement of facts. Judgment for defendant.

DOUGLAS, J. The decision of this case depends upon the construction of the words in the deeds of John S. Walling, guardian of Lenox G. Walling, to Nancy Medora Orrell, June 28, 1890, and of Nancy Medora Orrell and her husband to Lenox G. Walling of the same date, as follows :

(1)    " The internal division of the rooms and stairways of the mansion house to remain the same as during the life of said Isaac Walling, as said rooms and stairways were occupied and divided between Isaac and Reuben Walling," etc.

These deeds assumed to divide between the parties the land in question and the buildings which stood upon it. The language is the same in both deeds, and whatever effect is given to it, it must be taken as strongly against the one as against the other.

The first question is whether the clause is a part of the definition of the boundary line between the two parcels of land.

We think·it is clear that it cannot be so held, first, because the boundary line is complete without it. The course through the house is thus described : " thence north $80\frac{1}{2}$o west to the middle of the front door and on through the house to the middle of the back side of the house, it being fifty-six and. one-half feet ($56\frac{1}{2}$), then from the middle of the back side of the house N. 61° W. twenty-four (24) feet to the middle of the shop," etc.

Here we have a clear and positive boundary line, 56½ feet long, from the middle of the front door on through the house to the middle of the back side of the house. If the clause in question is a boundary, it differs from the straight line, and the deeds give two inconsistent boundary lines between the same two points.

Secondly, because the clause in question cannot be projected upon the ground. The occupation referred to is not the same on the first floor and on the second floor of the house. The partitions which bound the rooms on the upper floor are not superimposed on those which divide the rooms on the lower floor. If we attempt to run the boundary of the land by the description, we find it to be impossible. Again, a line drawn through the house, dividing it as occupied on either floor, would not connect with the other lines of the description of the deed ; it would not begin at the middle of the front door and would not end at the middle of the back side of the house.

We cannot, therefore, construe this clause to be any part of the description of the boundary line between the two parcels of land. It is not a case of two inconsistent boundaries, but of a well-defined boundary line and an agreement with respect to the property which does not define a boundary line of land at all.

It does not follow, however, that the clause interjected into the description of the land, though it be no part of the description of the boundary line, is of no effect as an agreement between the parties.

The words in this clause, referring to the mode of occupation by Isaac Walling and Reuben Walling, are, of course, unintelligible without extrinsic evidence, and this fact makes such evidence admissible. It is agreed that Isaac occupied the whole of the two rooms at the west end of the hall on the first and second floors, and that Isaac and Reuben used the front hall and front stairway in common.

By the provisions of Isaac's will he gives to Mrs. Orrell "one-half of the mansion house wherein I now live, it being the same portion of said house now or formerly occupied by

me as a tenement, and one-half of the door-yard around said house," etc., and to his son Lester A. Walling and his grandson Lenox G. Walling, the rest and residue of his estate, which included the portion of the house and land surrounding it which was not given to Mrs. Orrell; and when these deeds were made Lenox G. Walling had acquired Lester A. Walling's interest.

Their intention is clear enough in the premises. Under the will of Isaac Walling and the subsequent conveyance each owned in severalty a portion of the house, and both owned the land as tenants in common. They had run a boundary line and divided the land between them. The house stood in such a position with reference to this line that, if it went with the land, the part on one side of the line could not be exclusively occupied by the owner without trespassing upon the other side of the line. Several rooms in the house could not be conveniently used in parts by the respective owners of the land under them, and the front door and hall would be useless unless the right to use them in common were given to both owners.

(2)　The parties agreed that each should retain the part of the house which he owned before, construing the gift to Mrs. Orrell in her father's will to mean not an exact half of the house, but the rooms and privileges in it which her father had occupied and enjoyed, and the gift to her brother and nephew as covering the rooms and privileges which had been occupied and enjoyed by her brother Reuben. In Mrs. Orrell's deed, then, these words have the effect of an exception. She conveys the land described with the buildings thereon, except the rooms and rights in the house which she then possessed—*Tillinghast* v. *Fry*, 1 R. I. 53—and released to Lenox G. Walling any adverse claim to his retention, in common with herself, of the rights owned by them in common. In the deed of Lenox G. Walling, in so far as the clause covers anything which he could claim, it has the effect of an express grant; and as to the rights which he retains, it likewise has the effect of an exception. By this clause in his deed the easement to retain certain portions of the house *in*

*situ* upon land thenceforth owned by him passes as by express grant to Mrs. Orrell.

If the house, as well as the land, had been held in common by the parties, and the ownership of the house were intended to follow the division of the land, we should consider the clause, when viewed from the standpoint of the grantee, in so far as it gives to the owner of the south half of the house the exclusive occupancy of certain rooms, as a lease of such parts of said rooms as lie north of the division line of the land ; and in so far as it gives to her the use of the hall and stairway in common with the owner, and gives to the owner of the north half the use of the hall in common with the owner of the south half, as constituting mutual grants of easements of passage over the parts owned by the grantors respectively.

And then the same clause, when viewed from the standpoint of the grantor, would constitute a reservation of the rights then created and secured to him.

This analysis, however, of the legal effects of the clauses in the two deeds is rather curious than necessary. The parties owned the whole of the land and the whole of the house. They could divide the house and the land together or separately, as they saw fit. They chose to divide the land by a certain line, and the house by setting off certain rooms and defining rights in others, and they did this by making mutual concessions which were reasonable and practically inevitable, in such a manner as to be binding upon themselves and their successors in title.

Whether the ownership passed, or only the right to occupy (with the inevitable necessity of keeping in repair), is of no consequence in this case, or, practically, to the parties, so long as the use and enjoyment are assured.

(3)     It is urged by counsel for the plaintiff that the clause in question in the deed from Walling to him does not create an exception from the grant, and that it cannot be supported as a reservation because it is not in terms to the grantor, citing *Young, Petitioner*, 11 R. I. 636, and *Littlefield* v. *Mott*, 14 R. I. 288. These were cases where the court refused to uphold certain attempted reservations in deeds with full

covenant of warranty as not made to the grantors and as repugnant to the grant.

The argument is that, in the deed from Walling to the plaintiff, this clause appears as a reservation, and, being to strangers, is void. But as it reserves or retains rights which existed as against Walling before he conveyed to the plaintiff, it has the effect in his deed of an exception, and limits the preceding description of the property conveyed. Walling had previously granted these privileges to Mrs. Orrell, if she did not already own them. He therefore could not convey to a third party, except subject to them. If the clause had not been repeated in his deed his grantee would have been equally bound by its provisions, as it was duly recorded in the deed to Mrs. Orrell before the deed to the plaintiff was recorded. Where B. had a right of way across A.'s land, and, in conveying it, A. reserved the right of way to B., it was held to be an exception of the right of way out of the granted premises because, as a reservation to a stranger, it would be invalid. *Bridger* v. *Pierson*, 45 N. Y. 601, 603. *West Point Iron Co.* v. *Reymert*, 45 N. Y. 707, quoted in Washburn on Real Property, vol. 3, p. 462. Professor Washburn says further on this subject, page 461 : "Exceptions are often made in the form of a reservation where the thing intended not to pass by deed is then existing. Thus the grant of a farm, 'reserving to the public the use of the road through said farm, also reserving for W. R. R. the roadway for said road, as made out,' etc., was held to except the easement of the public and of the railroad out of the granted premises, and that the soil and freehold of these passed by the deed, the effect being to create an exception and not a reservation."

The plaintiff, therefore, never acquired title to the rooms and rights excepted in Mrs. Orrell's deed to Walling, or granted by Walling's deed to Mrs. Orrell, and cannot maintain this action.

Judgment for defendant for costs.

*Stone & Lovejoy*, for plaintiff.

*Cooke & Angell*, for defendants.